**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Pietro TIRASSO and Tito Lombana-Pineres, Defendants-Appellants.**

Nos. 76–1519, 76–1571.

United States Court of Appeals, Ninth Circuit.

March 25, 1976.

Rehearing Denied June 7, 1976.

Tom O'Toole, Federal Public Defender, Samuel Alba, Asst. Federal Public Defender, Phoenix, Ariz., for Lombana-Pineres.

Joseph B. Swan, Jr., of Swan & Woodford, Tempe, Ariz., for defendants-appellants.

William C. Smitherman, U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

## OPINION AND ORDER

Before GOODWIN, SNEED and KENNEDY, Circuit Judges.

ANTHONY M. KENNEDY, Circuit Judge:

Appellants Tito Lombana-Pineres and Pietro Tirasso were indicted in the Southern District of New York on charges stemming from an alleged attempt to smuggle 20 kilograms of cocaine into the United States from Colombia. They were arrested on November 19, 1975. Subsequently a criminal complaint was issued in the District of Arizona and the New York indictment was dismissed. On January 5, 1976, a magistrate ordered the appellants' removal to the District of Arizona, where they were indicted on January 20, 1976. A superseding indictment was issued February 18, 1976, and trial was set for April 13, 1976.

Since their arrest, appellants have remained in continuous custody in lieu of $100,000 bail. Appellants' motion for release from custody on their own recognizance was denied by the district court. They appeal, arguing that the Speedy Trial Act of 1974, 18 U.S.C. § 3164, mandates their release because they have been in continuous custody for more than ninety days awaiting trial.

Appellants do not charge the government with bad faith in causing their removal to Arizona or in failing to bring them to trial immediately. The delays were necessary to gather evidence of a criminal conspiracy whose dimensions grew as the investigation proceeded, and which eventually proved to be of massive proportions. The New York arrest and indictment charged appellants only with conspiracy to undertake a single transaction involving three defendants, but the subsequent Arizona indictments alleged that appellants engaged in a series of criminal transactions involving twenty-two defendants, in ten separate states, the Commonwealth of Puerto Rico, and four foreign countries. Arrest of the appellants prior to the conclusion of the investigation was necessary because they were foreign nationals, who had arrived only recently from abroad and were likely to leave the country at any time. While appellants could have been tried immediately for a portion of the conspiracy in the Southern District of New York, it was reasonable to remove them to Arizona, the hub of this far-flung conspiracy. Indeed, removal of such a case is required for the sound administration of criminal justice; the action conserved judicial resources and the resources of the defendants.

Appellants do not dispute the reasonableness of the procedures, the fact that the delay was occasioned by a lengthy investigation of a serious and massive criminal scheme, the good faith of the government, or the high probability that defendants will flee to a foreign country. But they argue that such considerations are irrelevant. They point out that the statute unconditionally mandates release from custody in all cases where the defendants have not been brought to trial within ninety days of arrest. 18 U.S.C. § 3164(c).

We are constrained to agree. The language of section 3164 is straightforward. We find no ambiguity in its interpretation. Subsection (b) provides that the trial of persons held in custody solely because they are awaiting trial must commence within ninety days following the beginning of such continuous detention. Subsection (c) provides that the failure to commence trial within the ninety day period, where such failure is not occasioned by the fault of the accused or his counsel, must result in an automatic review by the court of the conditions of release, and further that "no detainee . . . shall be held in custody pending trial after the expiration of such ninety-day period . . . ." Under the clear language of the statute the reason for delay is irrelevant, so long as it is not occasioned by the accused or his counsel.

# 1300

The legislative history, moreover, makes it clear that release of the defendant from custody, and nothing less, is the sanction for delay beyond the ninety-day period. "Failure to commence the trial of a detained person under this section results in the automatic review of the terms of release by the court and, *in the case of a person already under detention, release from custody.*" S.Rep.No.1021, 93d Cong., 2d Sess., *reproduced in,* 4 U.S.Code Cong. & Admin.News 7401, 7416 (1974) (emphasis added).

The government contended below that the ninety-day period has not expired, since appellants have been in custody in the District of Arizona only since January 5, 1976. Appellants, however, contend that they have been in continuous custody for the same offense since November 19, 1975, and the fact that a portion of the detention occurred in the Southern District of New York is of no consequence.

Section 3164 does not speak of detention within a particular district. Nor does it provide any periods of exclusion for delay occasioned by the special circumstances of difficult cases.[1] The statute simply provides that "the trial of any person [detained solely because he is awaiting trial] shall commence no later than ninety days following the beginning of such continuous detention." While the offense charged in the Arizona indictment is of a substantially larger scope than that charged in the New York indictment, they are both based on many of the same operative facts, and they are not, therefore, completely discrete offenses for which separate ninety-day periods might be applicable. Since appellants have been in custody for over ninety days awaiting trial on these charges, we hold that the clear and unambiguous terms of the Speedy Trial Act mandate their release pending trial.

We are fully aware of the dangers inherent in today's decision. The charges against these defendants are serious. We are not dealing with a haphazard attempt by amateurs to run the border with a small quantity of controlled substance, but rather with a sophisticated enterprise for importing wholesale quantities of dangerous drugs into the United States. The value of the 20 kilogram shipment alleged in the New York indictment was estimated between $500,000 and $600,000. The government's case, as now pleaded, alleges a series of six such transactions involving these two appellants. Appellant Tito Lombana has been identified as "the head of a huge organization responsible for sending large quantities of cocaine into the United States." Appellant Tirasso is identified as Lombana's liaison in the United States and as a direct participant in at least one previous transaction involving 5 kilograms of cocaine. Under these allegations the United States has the greatest interest in bringing these individuals to justice.

Release of these two foreign nationals from custody is tantamount to an invitation to flee across the Mexican border, less than 3 hours away. The district court, in denying appellants' motion for release, noted that there was virtually no way to assure the appearance for trial of a foreign national once he is set free in the District of Arizona. Defense counsel all but admitted that appellants, once released, could not be counted upon to appear. We have no doubt of the correctness of this proposition.

In light of these facts, the wisdom of the result Congress has decreed is questionable. We release a man alleged to be the head of

---

1. Our analysis is confined to § 3164, which pertains to all defendants in pretrial custody during the interim period from September 29, 1975, through June 30, 1979. We note, by way of contrast, that the statute provides an elaborate series of exceptions or exclusions applicable to the permanent and transitional periods. 18 U.S.C. § 3161(h). The fact that such exceptions or exclusions were explicitly provided in one portion of the statute but not in the other may have been the product of a drafting error, or perhaps was caused by a misunderstanding of the practical requirements of criminal administration. In any event, the contrast in the statute requires us to find that the clearly expressed congressional intent is to provide no periods of exclusion for the ninety-day trial requirement applicable during the interim period.

a foreign criminal organization dedicated to the smuggling of large quantities of illegal drugs, so that he may quickly cross the border and resume operating his business. We are also releasing his alleged right-hand man, as if to make certain that the enterprise continues to operate at top efficiency. But this result is the only one open to us under the plain terms of the statute.

It is discouraging that our highly refined and complex system of criminal justice is suddenly faced with implementing a statute that is so inartfully drawn as this one. But this is the law, and we are bound to give it effect.

It is therefore ordered that the district court release the appellants within 48 hours of the filing of this opinion upon such terms and conditions as the court may deem reasonable and not inconsistent with the views expressed herein.

The mandate will issue now.

Remanded.